*In re* ESTATE OF EDA M. ASCHAUER, Deceased (Edith Aschauer, Objector-Appellee and Cross-Appellant, v. Joseph H. Aschauer, Ex'r of the Will of Eda M. Aschauer, Deceased, Respondent-Appellant and Cross-Appellee).

Fourth District   No. 4—88—0545

Opinion filed August 31, 1989.

John G. Hayes, of Springfield, for appellant.

Robert T. Lawley, of Routman & Lawley, Ltd., of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:
This appeal is taken from the circuit court of Sangamon County. The circuit court found the estate executor had acted imprudently

and surcharged the executor for interest costs incurred during his administration of the estate. We agree the executor was imprudent but find the objector is precluded from raising objections on appeal which were not raised in the circuit court at the time each account was approved.

The decedent Eda M. Aschauer died on April 30, 1978, in Springfield, Illinois. She died testate leaving among her heirs her son Joseph, the executor of her will, and her daughter Edith, the objector in this case. Edith lived with her mother all of her life and during the last years of her mother's life was responsible for the care of her mother and the running of her mother's household and financial affairs.

Eda made several specific bequests to Edith. Among them were (1) $10,000, (2) approximately 70 acres of land in Sangamon County, (3) a life estate until Edith's marriage on approximately 150 acres in Sangamon County, including the family residence, and (4) a life estate until Edith's marriage in a one-third interest in the access road to the Sangamon County property. The remainder of the estate was to be divided among the children and grandchildren of Eda. This property included an undivided one-half interest in a 640-acre tract of land in Louisiana. The other one-half interest in the Louisiana property was already owned by Eda's heirs as beneficiaries of her husband's estate.

On May 29, 1978, letters testamentary were issued appointing Joseph as the executor of Eda's estate by the circuit court of Sangamon County.

### THE LOUISIANA REAL ESTATE

On January 5, 1979, the executor and objector, as well as all other heirs, filed a petition in Louisiana to be put in possession of the one-half of the Louisiana property included in the estate. On that same day the judicial court of St. Landry Parish, Louisiana, granted the petition. This effectively distributed the Louisiana real estate to the heirs. Subsequent income from this property went to the individual heirs as owners, rather than to the estate. This income would have amounted to approximately $40,000 for the period the land was outside the estate.

Edith later brought an action in Louisiana to recover the lands that had been distributed. The executor refused to join in the suit and was named as the defendant. The land then passed back into the estate and was sold on September 15, 1985. Net proceeds to the estate were $66,539.34.

## THE ESTATE TAXES

On January 23, 1979, the executor filed Federal estate and Illinois inheritance tax returns. In the Federal estate tax return the executor exercised an option provided by section 2032A of the Internal Revenue Code (Code) (26 U.S.C. §2032A (1976)). This section provides *inter alia*, that where farm real estate meets certain use and other requirements, it may be valued at a level much lower than its market value for the purposes of determining the estate tax. Had the election here been successful, the result would have been a greatly reduced tax burden on the estate. However, one of the requirements under this section is that in the eight years prior to the death of the decedent there must have been five years during which there was material participation by the decedent or a member of the decedent's family in the operation of the farm. 26 U.S.C. §2032A(b)(1)(C)(ii) (1976).

The executor would have reduced the tax burden on the estate by approximately $147,000 by this election had it been accepted by the Internal Revenue Service (IRS). Under this election, the farmland located in Illinois was valued at $135,000 instead of the anticipated $547,000. In addition, the executor made an election under section 6166 of the Code (26 U.S.C. §6166 (1982)). This allowed the Federal estate taxes to be paid over a period of 14 years at an interest rate of 4% per year. Tax payments were deferred for five years and then the tax was paid in 10 equal yearly installments. Interest payments were to be made throughout the entire 14-year period.

The IRS disallowed the section 2032A election and raised the estate tax obligation to the Federal government from $31,435.96 to $165,787.55. It allowed the section 6166 election. The IRS issued its closing letter on November 12, 1981. A supplemental Illinois inheritance tax return was filed on December 2, 1981.

## THE ESTATE ACCOUNTING

The executor filed a series of seven accounts covering the period from May 29, 1978, through March 15, 1986. The first four accounts, encompassing the period up to June 30, 1983, were filed and approved by the court with only minor objections. Appropriate notice was given to the relevant parties in each case. Included in these accounts were $21,467.77 in interest to the IRS, loans of $36,500 to the estate from the Illinois National Bank (INB), and interest payments of $1,184.74 to service this debt.

On November 21, 1984, the executor filed the fifth account for July 1, 1983, through June 30, 1984. He sought to be credited in amount of $2,308.26 for interest on the INB loans and $5,164.36 for

interest on the Federal taxes. No immediate approval was sought for this account.

On November 1, 1985, the executor filed his sixth account for July 1, 1984, through July 30, 1985. This account included interest to INB for $5,067.09 and to the IRS for $4,834.43. An additional $17,088.90 had been borrowed from INB at this point. The executor did not seek immediate approval of the account at the time it was filed.

On July 1, 1986, the executor filed his seventh and final account for the period July 1, 1985, through March 15, 1986. This account asked for approval of $5,653.25 to INB for interest. It reported the completion of partition proceedings of the Illinois farmland. The net proceeds of the sale after the payment of Federal estate taxes of $108,322 was $82,154.52.

On July 1, 1986, the executor set the fifth, sixth, and seventh accounts for hearing. On September 18, 1986, the objector filed objections to these three accounts. The objector alleged the executor had improperly borrowed money and paid interest to INB, had unnecessarily paid interest to the IRS, the final account showed appraisals at far less than at the time of decedent's death and the executor's formula for computing the value of the objector's life estate was incorrect.

On October 15, 1987, after a hearing on the objections, the court entered its order disapproving the fifth, sixth, and seventh accounts. The court found the executor's attempt to qualify the estate under section 2032A of the Code was not a reasonably prudent act, the estate was unnecessarily kept open, and the computation of the life estate value was properly made from the date of closing of the estate, not the date of the decedent's death. As a result, it disallowed the payment of the Louisiana property taxes by the estate on behalf of the individual heirs and interest payments to the Illinois National Bank and IRS as unnecessary expenses.

■ The finding of the circuit court that it was not reasonably prudent for the executor to attempt the section 2032A election was not against the manifest weight of the evidence. The evidence showed the decedent was an elderly woman in poor health who took little interest in the operation of the family farm. Prior to attempting the election, the executor did not make an adequate investigation of the decedent's circumstances. While we are cognizant of the complexity which often attends the application of the Federal tax code, section 2032A clearly requires the material participation of the decedent in five of the eight years prior to death. Given the circumstances revealed in the evidence here, we cannot say the circuit court erred in

finding as it did.

The trial court surcharged the executor the interest payments made to the IRS and the Illinois National Bank for the period after November 21, 1981. The interest cost to the estate came to a total of $50,391.17. However, of this amount, $25,648.51 was made during the time covered by the first four accounts presented to and approved by the court. This included $448.33 in taxes paid on the Louisiana real estate while it was in the hands of the individual heirs. The objector had notice of all these hearings but objected to only one of the Louisiana tax payments.

The executor argues the approval by the court of each account closes that period from further review and is *res judicata* for the matters contained in each account. If accepted, the executor's argument would foreclose the circuit court from surcharging interest paid during those periods where an accounting had been made and approved by the court. The question before us is the effect of the periodic accounts made in a probate administration as opposed to the final account.

██ ██ Under the 1939 Probate Act interim accounts could be set aside or modified at the final accounting. (Ill. Rev. Stat. 1975, ch. 3, par. 1 *et seq.*; *In re Estate of Ekiss* (1963), 40 Ill. App. 2d 1, 188 N.E.2d 348.) This question has arisen here for the first time under the new Probate Act of 1975 and specifically under section 24—2, which went into effect on January 1, 1976.

> "Notice of accounting—Effect. Notice of the hearing on any account of a representative of a decedent's estate shall be given as the court directs to unpaid creditors and to every person entitled to a share of the estate who has not received that share in full. If the account is approved by the court upon the hearing, in the absence of fraud, accident or mistake, the account as approved is binding upon all persons to whom the notice was given. No notice need be given to any person from whom a receipt in full is exhibited to the court or who waives notice." (Ill. Rev. Stat. 1977, ch. 110½, par. 24—2.)

The clear language of the statute requires us to overturn earlier authority based on the prior act and to hold the approval of an account by the court is binding on all parties who had notice and is *res judicata* for that period. In this case, the objector had notice of all the hearings for presentation of the accounts. The objector raises no allegations of fraud, accident, or mistake in the accounting. The accounts for the periods approved by the circuit court cannot be reopened under these circumstances. For this reason the circuit court erred when

it surcharged the executor for interest costs in the accounts which it had already approved. As we reverse on these grounds, we need not consider whether the objector is estopped by her consent to the section 2032A election to objecting to the IRS interest payments. Interest directly attributable to this election was accrued only until the IRS issued its closing letter and was part of the accounts approved by the court.

■ Having held the first four accounts cannot be reopened, we turn next to the surcharge for the interest payments made in the fifth, sixth, and final accounting periods. These accounts were presented but not approved by the court until the final account was made and there are objections raised to the interest payments in each of them. Illinois law provides an executor can be surcharged for diminution of an estate caused by his failure to liquidate the estate's assets within a reasonable time. (*In re Estate of Lindberg* (1981), 98 Ill. App. 3d 212, 424 N.E.2d 1161.) It is the duty of an administrator or executor to close an estate promptly and he has no right to continue a decedent's business without incurring personal liability except in compliance with statute with respect thereto. *In re Estate of Connors* (1959), 23 Ill. App. 2d 240, 161 N.E.2d 871.

■ In this case, it was not the executor's section 2032A election that caused a diminution in the estate but rather his failure to close the estate promptly. The circuit court's memorandum of opinion and final order both reflect the executor was surcharged not for poor judgment in attempting the election but for keeping the estate open long after the section 2032A election had been denied and incurring substantial interest costs as a result. The executor's testimony showed he was aware the Illinois farmland was capable of producing an income of only about $6,000 a year. He knew the financial condition of the estate continued to decline from the opening of his administration with a $30,000 cash surplus to the closing with the estate in considerable debt. Clearly there was a diminution of the estate for which the executor should be held responsible. He should be surcharged for the interest expenses incurred in the fifth, sixth, and final accounting periods when the estate should have been closed and the objector properly objected in a timely fashion. However, the estate also realized income from the Illinois farmland during this period and the surcharge to the executor should be offset by the amount of income received.

■ In his final account, the executor apportioned $108,322.71 of the Federal estate tax among the three parcels of Illinois farmland. Because the value of the objector's life estate was based on the net

value of the life estate property after subtraction of the proportioned estate taxes, she argues her tax burden is disproportionate in comparison with those of the other beneficiaries. The objector has cited *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, for the proposition the Federal estate tax must be assessed on the property as a whole and cannot be apportioned. The executor responds this is a misapplication of *Roe* and it is distinguishable on its facts in that it involved a distinction between probate and nonprobate assets. However, the language of *Roe* does not limit its application to a situation involving nonprobate assets. The supreme court wrote: "Unlike our inheritance tax, which is a tax on the right of succession to the beneficial interest in the property of a decedent [citations], the Federal estate tax is imposed on the transfer of the taxable estate as a whole [citation]." (*Roe*, 69 Ill. 2d at 529, 372 N.E.2d at 664.) The burden of the Federal estate tax falls directly upon the corpus of the estate as a whole and is payable by the executors. *Lawless v. Lawless* (1958), 17 Ill. App. 2d 481, 150 N.E.2d 646.

The trial court erred in allowing apportionment of the Federal taxes. The Federal estate tax must be paid from the whole of the estate. The net proceeds to the objector will necessarily be diminished by the estate tax whether the tax is apportioned to the individual properties or laid upon the estate as a whole. The calculation of the objector's life estate should, however, be based on the portion of the property representing the life estate taken from the whole estate diminished by the Federal estate taxes, not apportioned among the individual properties. The objector is entitled to whatever benefit she may derive from the recalculation.

Finally, the objector claims the executor should have used her age at the time of the death of the decedent to calculate her life estate value rather than her age at the time of the final accounting. The objector apparently wishes to recover the income of the life estate which she did not receive during the executor's administration.

■■ ■ In Illinois, the sale of a life estate is governed by section 17—120 of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 17—120.) This section provides in part:

> "When [a life estate] is sold, the value thereof may be ascertained and paid over in gross, or the proper proportion of the funds invested, and the income paid over to the party entitled thereto, during the continuance of the estate." (Ill. Rev. Stat. 1985, ch. 110, par. 17—120.)

The statutory language indicates the proper time for the valuation of a life estate is the time of sale. The valuation of the life estate was

made on the closing of the estate shortly after the sale of the life estate property. It was proper for the trial court to use the objector's age at that time for the calculation. The objector may not use the calculations of the life estate value as a vehicle to recover income which she should have claimed directly from the estate. For this reason there is no ground on which to disturb the findings of the trial court on this issue.

For the reasons discussed above, we affirm the circuit court's finding that the section 2032A election was not reasonably prudent. However, we reverse the circuit court's calculation of the surcharge and remand so the court may recalculate the surcharge in conformity with this opinion. We also remand so the circuit court may recalculate the value of the life estate with the Federal estate tax on the estate as a whole, rather than apportioned among the Illinois properties only.

Affirmed in part; reversed in part and remanded for further proceedings not inconsistent with this opinion.

SPITZ and GREEN, JJ., concur.