COLDWELL BANKER HAVENS, INC., Plaintiff and
Counterdefendant-Appellee, v. LOUIS RENFRO *et al.*, Defendants and
Counterplaintiffs-Appellants (Melvin Lipe, Escrow Holder, Defendant).

Fifth District    No. 5—96—0525

Opinion filed May 21, 1997.

Don E. Prosser, of Gilbert, Kimmel, Huffman & Prosser, Ltd., of Carbondale, for appellants.

Robert P. Schulhof, of Robert P. Schulhof & Associates, of Carbondale, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

Defendants, Louis and Golda Renfro, appeal from the trial court's order denying their motion for attorney fees pursuant to a listing agreement with plaintiff, Coldwell Banker Havens, Inc. (Coldwell Banker), filed after the first appeal in this case. The trial court, in denying the Renfros' motion for attorney fees, which was based upon the agreement, determined that since the appellate court reversed the trial court's original decision and found that Coldwell Banker was not entitled to a broker's commission because the agreement had been terminated by acts of the Renfros, the Renfros similarly cannot base their claim for attorney fees upon this same agreement, which they successfully argued was terminated. The issue in this appeal is whether the court erred in determining that the Renfros were not entitled to attorney fees under the parties' original agreement. We reverse and remand for the reasons set forth below.

## FACTS

This case is before this court for a second time. In the first appeal (*Coldwell Banker Havens, Inc. v. Renfro*, No. 5—94—0692 (September 13, 1995) (unpublished order under Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1,

1994))), Coldwell Banker claimed that the Renfros breached their contract (the exclusive listing agreement) with Coldwell Banker, and Coldwell Banker sought a broker's commission for the Renfros' sale of the property which was the subject of the listing agreement. The listing agreement was executed by the parties on June 24, 1992. The listing agreement was for a year but contained a termination clause, which provided that either party could terminate the contract after 180 days, upon 30 days' written notice. The contract also provided that if the Renfros' property was sold within six months after the termination of the contract, Coldwell Banker still would be entitled to a broker's commission if the property was sold by the Renfros to a buyer who had been first shown the property, directly or indirectly, by Coldwell Banker. Coldwell Banker showed the property to Southern Illinois Hospital Corporation (the Corporation) sometime in November or December, but the Corporation did not make an offer. On December 1, 1992, Louis Renfro hand-delivered a typewritten letter to Coldwell Banker cancelling his listing contract with Coldwell Banker on December 31, 1992. It was shown that after Louis gave the notice of termination, he still had contact with Coldwell Banker regarding the property. The evidence conflicted at the first trial as to the number and dates of these contacts. The contract also contained a provision which stated, "In the event that any action is filed in relation to this listing, the unsuccessful party in the action shall pay to the *successful party* \*\*\* a reasonable sum for the successful party's attorney's fees." (Emphasis added.)

On December 3, 1993, the Renfros sold their property to the Corporation. Coldwell Banker claimed that it was entitled to a commission for the sale. Coldwell Banker filed suit to collect the commission, alleging in its complaint that Coldwell Banker was entitled to the commission because the sale was within six months of the termination of the contract. Coldwell Banker also claimed it was entitled to reasonable attorney fees under the contract.

The Renfros answered the complaint and in their answer included the affirmative defense that Louis had terminated the contract in writing on December 1, 1992, and a counterclaim for slander of title, based upon Coldwell Banker's recording of the listing agreement to place the Corporation on notice that Coldwell Banker was seeking a broker's commission. In the Renfros' counterclaim, one paragraph stated, "Said claimed lien subjected the counterplaintiff[s] to escrow $30,000 in funds which are lawfully the counterplaintiff[s'][,] to incur substantial attorneys fees and court costs, and to suffer other damages." In the prayer for relief of the counterclaim, the Renfros sought the costs of the suit and reasonable attorney fees.

Following a hearing, the trial court made a finding, given the Renfros' actions after January 1, 1993, and after the termination notice given by Louis, as follows: "It was contrary to all principles of equity to allow the defendants to rely upon the December 1, 1992[,] letter to terminate the contract ***." The court further found that Louis's notice of termination of December 1, 1992, was ineffective, that the termination date of the contract was June 23, 1993, and that the sale of the property was within six months following the termination of the contract (December 22, 1993), thereby entitling Coldwell Banker to a broker's commission. The court also found that the Renfros failed to establish a *prima facie* case for slander of title. The court entered judgment in favor of Coldwell Banker, awarding it a broker's commission and attorney fees and denying the Renfros' counterclaim for slander of title. The Renfros appealed.

On appeal, this court reversed the trial court's decision. We concluded that the Renfros' notice terminating the listing agreement was effective. However, this court also addressed Coldwell Banker's entitlement to a broker's commission under the equitable principle of *quantum meruit*. This court determined that Coldwell Banker could not receive a broker's commission under this theory either, because there was no evidence that Coldwell Banker was the "procuring cause," given that Coldwell Banker had done nothing to assist in the sale after August or September 1993 and that Coldwell Banker had abandoned the Corporation as a potential purchaser, and therefore, Coldwell Banker had not produced a ready, willing, and able buyer for the Renfros.

The appellate court's mandate reversing the trial court's judgment was filed in the trial court on January 11, 1996. Within 30 days of the filing of the mandate, the Renfros filed a motion for an award of attorney fees as the "successful party" to the litigation, under the listing agreement provision previously quoted. Coldwell Banker objected to this motion. Following the hearing on the Renfros' motion and Coldwell Banker's objection, the trial court denied the Renfros' motion. This ruling provides the basis for the Renfros' second appeal.

## ANALYSIS

As stated previously, the primary issue on appeal is whether the trial court erred in denying the Renfros' motion for attorney fees under the provision of the listing agreement which allowed the "successful party" to any litigation under the agreement to recover attorney fees. On appeal, the Renfros argue that since they became the "successful party" to the litigation initiated by Coldwell Banker, after the appellate court reversed the trial court in the first appeal,

they are entitled to recover attorney fees and costs of suit. The Renfros claim that the trial court's refusal to award them attorney fees is contrary to law and that the trial court wrongfully based its denial of the Renfros' motion on this court's prior Rule 23 order.

Coldwell Banker argues that the trial court had no authority or jurisdiction to act on the Renfros' motion after the mandate of the appellate court was filed; that the "rule of the case doctrine" prohibits the trial court from considering the Renfros' motion; that since the Renfros did not make any claim for contractual attorney fees by filing a counterclaim for fees and presenting evidence on the counterclaim before the judgment of the trial court was rendered in the initial trial, they are not entitled to new additional relief; and that the trial court properly denied the Renfros' motion because a fee action cannot be brought upon a nonexistent agreement.

Because Coldwell Banker has raised a jurisdictional argument, we first address this issue. Coldwell Banker claims that this court's mandate did not allow for further proceedings, as this court only reversed the trial court's original order and did not remand this case for further proceedings. By the trial court considering the Renfros' motion, Coldwell Banker claims that the trial court had no jurisdiction and was expanding upon the mandate issued by this court.

■ The appellate court's mandate is the transmittal of the judgment of the reviewing court to the circuit court and revests the trial court with jurisdiction. *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291 (1981). Thus, Coldwell Banker is in error that the trial court had no jurisdiction to consider the Renfros' motion, as the mandate filed in the circuit court on January 11, 1996, revested the trial court with jurisdiction in this case. However, Coldwell Banker is correct that a trial court must abide by the direction of the appellate court's mandate and must conform its subsequent actions to this document. *PSL Realty Co.*, 86 Ill. 2d 291. A trial court has no authority to act beyond the direction of the reviewing court's mandate. *PSL Realty Co.*, 86 Ill. 2d 291. Thus, if the trial court in the case *sub judice* did not abide by this court's mandate, as Coldwell Banker claims, then the trial court had no authority to enter the order that is the subject of this appeal.

■ Supreme Court Rule 369 (134 Ill. 2d R. 369) is relevant to our discussion. Rule 369 provides for the filing of the mandate. This rule discusses dismissals, affirmances, and remandments but does not include any provision for an outright reversal without remandment. However, section (b) of Rule 369 provides that, after the mandate is filed, "enforcement of the judgment may be had and other proceedings may be conducted as if no appeal had been taken." 134 Ill. 2d R.

369. It is this additional language that allows other proceedings to transpire after a mandate has been filed in the trial court. We must determine, therefore, if the Renfros' motion for attorney fees was another proceeding in this case.

*White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 71 L. Ed. 2d 325, 102 S. Ct. 1162 (1982), was an action for attorney fees brought under section 1988 of chapter 42 of the United States Code. Under section 1988, the "prevailing party" in actions brought under certain sections of the United States Code is entitled to collect attorney fees from the other party. In *White*, judgment was entered by the district court, but a settlement agreement was entered prior to a decision by the court of appeals. The district court approved the consent decree and entered judgment accordingly. Subsequently, a postjudgment request was made for attorney fees under section 1988. The request for fees was granted by the district court, but the court of appeals reversed, and then the Supreme Court considered the issue. The Supreme Court held as follows:

> "Section 1988 provides for awards of attorney's fees only to a 'prevailing party.' Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has 'prevailed.' Nor can attorney's fees fairly be characterized as an element of 'relief' indistinguishable from other elements. Unlike other judicial relief, the attorney's fees allowed under [section] 1988 are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial. [Citation.]" *White*, 455 U.S. at 451-52, 71 L. Ed. 2d at 331, 102 S. Ct. at 1166.

We find the foregoing reasoning to be persuasive in the instant case.

■ Here, under the contract provision of the listing agreement, it was the "successful party" who would become entitled to attorney fees from the other party. Just as in *White*, it cannot be determined who is the successful party until a final judgment is reached, which occurred when this court's judgment in the prior appeal was entered. Thus, we find that the Renfros' request for attorney fees was a separate action, which only could be brought by the Renfros after this court's mandate was entered. The Renfros' request for attorney fees is an "other proceeding" under Supreme Court Rule 369(b). The trial court was not expanding or acting outside this court's mandate from the first appeal in ruling on the motion. A similar holding, that a court could proceed on a new request after the appellate court had reversed but not remanded a portion of a case, was entered in *Russell v. Klein*, 46 Ill. App. 3d 660 (1977).

Further, the trial court was not prohibited from considering the Renfros' motion under the law of the case doctrine, as Coldwell Banker argues. The law of the case doctrine provides that once a question is litigated and decided, that is the end of the matter, and the decision settles the question for all subsequent stages of a lawsuit. *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681 (1994). Here, the law of the case decided in the prior appeal was that the listing agreement was terminated by the Renfros' written notice of December 1, 1992, and that Coldwell Banker was not entitled to a broker's commission under the contract or on the equitable principle of *quantum meruit*. The prior appeal did not make a determination of who was a "successful party" under the contract or if the contract provision for attorney fees was applicable here. Thus, the law of the case doctrine would not be violated by the trial court.

■ Coldwell Banker's next argument is that the Renfros failed to present a counterclaim for attorney fees and failed to present evidence of same in the initial trial. Coldwell Banker therefore claims that the issue was not adequately preserved for further review. We find that Coldwell Banker waived this contention. Section 2—604 of the Civil Practice Law (735 ILCS 5/2—604 (West 1994)) provides that "[p]rayers for relief which the allegations of the pleadings do not sustain may be objected to on motion or in the answering pleading." 735 ILCS 5/2—604 (West 1994). The Renfros did make a request for attorney fees in the earlier litigation in the prayer for relief of their counterclaim. Coldwell Banker did not object to the attorney fee request in the prayer for relief, so this objection to the Renfros' motion for fees was waived.

■ Additionally, just as equity required a consideration of whether Coldwell Banker was entitled to a broker's commission under the equitable principle of *quantum meruit*, so, too, equity requires that it must be determined whether the Renfros are entitled to attorney fees under the contract because their counterclaim for slander of title was sufficient to place Coldwell Banker on notice of the Renfros' intent to seek attorney fees under the contract, should they prevail, and Coldwell Banker cannot and has not alleged that it was surprised by the request. Thus, equity requires that the Renfros be allowed to seek attorney fees after the filing of the mandate of the first appeal.

■ Lastly, Coldwell Banker claims that because the contract was terminated, as determined on appeal, the Renfros' motion was not brought pursuant to the contract and cannot stand. This argument is without merit. There is no dispute that a valid contract was entered into by the parties. According to this court's earlier Rule 23 order, it

is now final that the contract terminated on January 1, 1993. However, Coldwell Banker initiated this litigation, and the sole basis of its complaint for the broker's commission was the listing contract. Since Coldwell Banker's litigation was brought as an "action in relation to this listing," it is clear that the Renfros' defense of the action was also under the listing agreement. It is irrelevant that the contract had terminated, as the cause of action was still brought in relation to the agreement. The parties agreed to the provision regarding attorney fees, and the cause of action was brought under the contract. Therefore, the Renfros are entitled to their attorney fees since they are the "successful party."

We find that our decision is also in accord with the holdings of *Myers v. Popp Enterprises, Inc.*, 216 Ill. App. 3d 830 (1991), and *Touchdown Sportswear, Inc. v. Hickory Point Mall Co.*, 165 Ill. App. 3d 72 (1987), wherein attorney fees were sought after judgment. The trial court erred in denying the Renfros' motion for attorney fees under the contract. We therefore reverse the decision of the trial court and remand this case for a determination of the amount of reasonable attorney fees due the Renfros.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Jackson County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

KUEHN, P.J., and WELCH, J., concur.